IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE:<br><br>AMBROSE CONSTRUCTION AND ROUSTABOUT SERVICE, LLC,<br>Debtor. | Case No. 15-13956<br>(Chapter 11) |

**EMERGENCY MOTION FOR ORDER AUTHORIZING
PAYMENT OF PREPETITION EMPLOYEE OBLIGATIONS, WITH
BRIEF IN SUPPORT, AND NOTICE OF OPPORTUNITY FOR HEARING**

************

**NOTICE OF OPPORTUNITY FOR HEARING**

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THIS DOCUMENT CAREFULLY AND CONSULT YOUR ATTORNEY ABOUT YOUR RIGHTS AND THE EFFECT OF THIS DOCUMENT.** A HEARING WILL BE CONDUCTED ON THIS MATTER AT THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF OKLAHOMA, OLD POST OFFICE BUILDING, 215 DEAN A. MCGEE AVENUE, OKLAHOMA CITY, OKLAHOMA. IF YOU DO NOT WANT THE COURT TO GRANT THE REQUESTED RELIEF, YOU MUST FILE A WRITTEN RESPONSE OR OBJECTION SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF OKLAHOMA, 215 DEAN A. MCGEE AVENUE, OKLAHOMA CITY, OK 73102. IN ADDITION TO FILING YOUR RESPONSE WITH THE CLERK, YOU MUST SERVE A FILE-STAMPED COPY OF YOUR RESPONSE OR OBJECTION ON THE SIGNING ATTORNEY AND TO ANY OTHER PARTY SPECIFIED. IF NO RESPONSE OR OBJECTION IS TIMELY FILED, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED WITHOUT HEARING.

EMERGENCY RELIEF AND AN EXPEDITED HEARING HAVE BEEN REQUESTED. IF THIS COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS TIME TO RESPOND. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT AND IMMEDIATELY SERVE A COPY OF YOUR RESPONSE ON COUNSEL FOR DEBTOR AND ANY OTHER PARTY SPECIFIED. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.

************

Debtor-In-Possession, Ambrose Construction and Roustabout Service, LLC ("Debtor") hereby files this motion (the "Motion") for entry of an order authorizing Debtor to pay prepetition obligations related to wages, payroll deductions and withholdings, as well as costs associated with insurance and other employee benefits (collectively, "Employee Obligations") discussed in more detail below. In support of this Motion, Debtor states:

**A.    Jurisdiction and Venue.**

    1.    The Court has jurisdiction of the Motion under 28 U.S.C. §§ 157 and 1334.

    2.    This matter presents a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

    3.    Venue is properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

    4.    The relief sought herein is authorized pursuant to 11 U.S.C. §§ 105(a), 363(b), 507(a)(4), 541(d), and Fed. R. Bankr. P. 6003.

**B.    Relevant Facts.**

    5.    Debtor filed its petition under Chapter 11 of the United States Bankruptcy Code ("Code"), on October 15, 2015 (the "Petition Date").

    6.    Debtor continues to operate its remaining business and manage its affairs as debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

    7.    No statutory committee has been established as of the filing of this Motion.

    8.    A description of the Debtors' business, the reasons for filing these chapter 11 cases and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set forth in the First Day Declaration, which was filed

contemporaneously with this Motion [Dkt. No. 2]. The Debtors hereby adopt and incorporate the First Day Declaration as if fully set forth herein.Debtor is an Oklahoma Limited Liability Company established on April 24, 2009 with its primary place of business located in Payne County, Oklahoma.

**C.      Relief Requested.**

9.      Debtor seeks authority under 11 U.S.C. §§ 105(a), 363(b), 507(a)(4), (5) and (8) and 541(b)(7) to pay certain prepetition obligations to and on behalf of Debtor's hourly and salaried employees, (collectively the "Employees").

10.     As more fully set forth below, these prepetition obligations may include, but are not limited to: **(a)** amounts owed to the Employees for wages, salaries, and other accrued compensation, as well as third party payroll processing fees (collectively "Prepetition Compensation"); **(b)** all Employee benefits including but not limited to health related insurance, disability benefits, workers' compensation benefits, accidental death and dismemberment benefits, 401(k) plan contributions and life insurance, if any (collectively, the "Prepetition Benefits"); **(c)** federal, state and local payroll-related taxes and insurance deductions and withholdings, such as FICA, FUI, and SUI, as well as workers' compensation premiums and amounts due to other third parties for garnishments and the like (collectively, the "Third-Party Obligations"); and **(d)** to reimburse employees for expenses incurred on behalf of the Debtor (the "Reimbursable Expenses").

11.     Debtor requests authority, but not direction, to pay any and all Prepetition Compensation, Prepetition Benefits, and Third-Party Obligations (collectively the "Prepetition Employee Obligations").

12.     Additionally, notwithstanding anything in this Motion to the contrary, the payment of any claims pursuant to an order granting this Motion (if such an order is entered by this Court) shall neither (i) make such obligations administrative expenses of the estate entitled to priority status under 11 U.S.C. §§ 503 and 507, nor (ii) constitute approval by this Court of any employee plan or program.

13.     To assist in the implementation of the relief requested, Debtor further requests that its banks be authorized to honor: (i) prepetition payroll checks, wires, or other electronic transfers, and (ii) all other checks, wires, or other electronic transfers issued for payments sought to be approved by this Motion, regardless of whether such checks, wires, or other electronic transfers were drawn or initiated prior to or after the Petition Date.  Debtor also seeks authorization to reissue prepetition checks, wires, or other electronic transfers for payments approved by this Motion that are dishonored or not completed notwithstanding such authorizations.

14.     As of the Petition Date, Debtor estimates that the following have accrued and become payable in the approximate amounts of:

|   |   |   |
|---|---|---|
| (a) | Prepetition Compensation: | $108,736.56 |
| (b) | Prepetition Benefits: | $   8,908.12 |
| (c) | Third-Party Obligations: | $  28,289.72 |
|   | **Total:** | **$145,834.40** |

15.     The Prepetition Employee Obligations are further described as follows:

*Prepetition Compensation:*

16.     Debtor presently has approximately 44 full time Employees, consisting of 11salaried workers and 43 hourly workers.  Debtor normally pays Employees bi-weekly at midnight on Monday for the two-week period ended the preceding Sunday.  The Debtor last issued payroll checks for the period covering September 21, 2015 through and including October 4, 2015 at midnight on October 5, 2015.

17.     Because the current pay period began before the Petition Date, a portion of the wages and salaries for the current pay period represent prepetition debt of Debtor.  Moreover, some payroll checks issued to Employees prior to the Petition Date may not have been presented for payment or cleared the banking system prior to the Petition Date and, accordingly, may not have been honored and paid as of the Petition Date.  The gross outstanding Payroll Obligations is approximately $108,302.00.

*Prepetition Benefits:*

18.     Prior to the Petition Date, Debtor offered its Employees certain benefits, including, without limitation, medical and prescription benefits, vision benefits, and.

19.     The Prepetition Benefits are an integral and important part of each Employee's compensation package.  Cessation of these benefits would have a negative impact on the Employees and would undermine Debtor's operations.

20.     Debtor estimates that the aggregate amount of Prepetition Benefits is approximately 8,908.12.

21. Accordingly, Debtor respectfully requests authority to pay the Prepetition Benefits, including any outstanding pre-petition amounts, for the Employees and their eligible dependents in the ordinary course of Debtor's business when such obligations become due.

*Third-Party Obligations:*

22. During each applicable pay period, Debtor routinely deducts certain Third Party Obligations from Employee paychecks, including, without limitation garnishments for child support and similar deductions, other pre-tax and after-tax deductions payable pursuant to certain of the Employee benefit plans, and other miscellaneous deductions and contributions for Employee benefits.

23. Debtor is also required by law to withhold from an Employee's wages amounts related to various taxes, including federal, state, and local income taxes, for remittance to the appropriate federal, state, or local taxing authorities. Similarly, Debtor is required to pay unemployment taxes quarterly.

24. Debtor also maintains Workers' Compensation coverage for its Employees pursuant to the existing schemes and mechanisms in place in the respective states in which Debtor operates. Debtor processes these claims through established procedures under applicable state law in the ordinary course of its businesses.

25. Debtor estimates that the gross amount of Third Party Obligations which remain unpaid as of the Petition Date is approximately $28,289.72.

26. Debtor requests approval to continue making Third Party Obligation payments, including those amounts owed prepetition, in the ordinary course of their

businesses, to continue its current procedures with regard to processing and paying Workers' Compensation benefits.

*Reimbursable Expenses:*

27. Prior to the Petition Date and in the ordinary course of business, the Debtor reimbursed Employees for reasonable expenses incurred on behalf of the Debtor in the ordinary course of business. It would be inequitable and would cause harm to morale to deny reimbursement of such expenses. Moreover, it is essential to the continued operation of the Debtor's business that the Debtor be permitted to continue to reimburse Employees for such business-related Reimbursable Expenses, whether incurred by an Employee on a pre- or post-petition basis.

28. Under the Debtor's reimbursement policy, the Employees must submit expense reports, including receipts, or the reimbursement may be denied. Because Employees do not always submit reimbursement claims promptly, it is difficult to determine the exact outstanding amount at any one time, but these amounts are nominal. As of the Petition Date, the Debtor estimates that Reimbursable Expense obligations total less than $5,000.00.

**D.     Notice.**

29. Notice of this pleading has been provided by overnight delivery to: (i) the Office of the United States Trustee; (ii) Bruckner Leasing Company, Inc., (iii) Debtor's 20 largest unsecured creditors; (iv) the Internal Revenue Service, (v) the Oklahoma Tax Commission, (vi) VFP Asset Funding, LLC., (vii) BancFirst; (viii) Volvo Financial

Services; (xi) Don Rice, (xii) Floyd Wright, and (xiii) Cornerstone Land Development, LLC.

30.    In light of the expedited nature of the relief requested herein, and the irreparable harm to Debtor that may ensue if the relief is not granted, the Debtor submits the notice provide in the immediately preceding paragraph is due, proper, and sufficient, and that that no further notice need be given.

**E.    Basis for relief.**

31.    The Debtor believes that immediate payment of the Prepetition Employee Obligations is critical (i) to the ongoing operation of the Debtor's business and (ii) to avoid irreparable harm to the Employees and the reorganization efforts of Debtor.

32.    If the Prepetition Employee Obligations are not paid, the Debtor will risk tangible and intangible loss of the value of its business, including, among other things, losses relating to the cost of replacing Employees who seek alternative employment and losses related to the disruption of, and lower productivity in, the Debtor's business.

33.    In authorizing payments of certain prepetition obligations, courts rely on several legal theories rooted in sections 1107(a), 1108, 105(a), 363(b), 507(a)(4) and 507(a)(5) of the Bankruptcy Code, as well as the doctrine of necessity.

34.    Courts generally acknowledge that it is appropriate to authorize the payment or other special treatment of prepetition obligations in appropriate circumstances, such as when necessary to preserve the going concern value of a debtor's business, thus facilitating its reorganization. *See, e.g., Miltenberger v. Logansport, Crawfordsville & Sw. Ry. Co.*, 106 U.S. 286, 311 (1882) (holding that "[m]any

circumstances may exist which may make it necessary and indispensable to . . . the preservation of the property, for the receiver to pay preexisting debts of certain classes, out of the earnings of the receivership . . ."); *In re Chateaugay Corp.*, 80 B.R. 279, 285-87 (S.D.N.Y. 1987) (finding that a court's equitable powers include the authority to authorize a debtor to pay prepetition debts).

35. The doctrine of necessity permits a deviation from the equal treatment of creditors because "otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its prepetition claim." *In re United Am., Inc.*, 327 B.R. 776, 781 (Bankr. E.D. Va. 2005); *In re NVR L.P.,* 147 B.R. 126, 128 (Bankr. E.D. Va. 1992) (necessity of payment exception "well-established in bankruptcy common law").

36. While § 105(a) alone is sufficient - *see Ionosphere Clubs*, 98 B.R. at 176 - other courts have applied it in conjunction with §§ 1107(a) and 362(d) to allow payment of prepetition claims under the doctrine of necessity. *See In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (opining that the debtor-in-possession and its "critical vendors" could request relief under § 362(d) for cause, such cause "being the urgency and necessity of paying the prepetition claims, such payment being the only means of protecting the going concern value of the operating business in Chapter 11").

37. Further, Rule 6003 of the Federal Rules of Bankruptcy Procedure provides that the bankruptcy court, if "necessary to avoid immediate and irreparable harm," may grant relief early in a case to "use, sell, lease, or otherwise incur an obligation regarding property of the estate, ***including a motion to pay all or part of a claim that arose before the filing of the petition*** . . . ." (emphasis added). Thus, Rule 6003 specifically

contemplates granting relief to honor prepetition claims where necessary to preserve the estate and the debtor's prospects for reorganization and provides guidance on whether such authority should be granted immediately or delayed.

38. Additionally, 11 U.S.C. § 363(b)(1) provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

39. Section 363(b)(1) gives the court "broad flexibility in tailoring its orders to meet a wide variety of circumstances." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). Before the Court can apply section 363(b) in its favor, the debtor must "articulate some business justification, other than mere appeasements of major creditors." *Id.* (the debtor gave "sound business reasons for its decision to pay pre-petition wages," those reasons being that it was necessary to "serve and protect its business and ultimately reorganize, retain its currently working employees and maintain positive employee morale"). Here, Debtor's request to pay prepetition amounts related to the Prepetition Employee Obligations satisfies this standard because the failure to do so would have an immediate material adverse impact on its day-to-day operations, which would, in turn, hinder its restructuring efforts.

40. Further, 11 U.S.C. §§ 507(a)(4) and 507(a)(5) entitle the majority of the Prepetition Employee Obligations to priority treatment, including the costs of administrating employee benefits programs. *See e.g., In re Cardinal Indus., Inc.*, 164 B.R. 76, 78 (Bankr. S.D. Ohio 1993) ("[U]nder a self-insured plan which is administered by a third party, giving priority solely to the direct contributions from the employer

accomplishes only half the desired result. Unless the employees' claims are properly administered, processed and paid, affording priority to the contributions is meaningless.").

41. To confirm a chapter 11 plan, the Debtor must pay priority claims in full. *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual, and (b) contributions to an employee benefit plan). Thus, granting the relief sought herein only affects the timing of payments to Employees, and does not negatively impact recoveries for general unsecured creditors. Indeed, the Debtor submits that payment of Employee claims at this time enhances value for the benefit of the Debtor and all interested parties.

42. In the instant case, the Debtor believes that the amount of prepetition wages, salaries, benefits, and contractual compensation owing to or on account of any particular Employee does not exceed the sum of $11,725 allowable as a priority claim under § 507(a)(4) or § 507(a)(5) of the Bankruptcy Code. By this Motion, the Debtor does not seek authority to pay such Employees more than the $11,725 priority limit to satisfy such claims. Therefore, the payment of these amounts pursuant to this Motion would not deplete assets otherwise available to other unsecured creditors under a plan.

43. Likewise, because the prepetition processing costs are entitled to priority under section 507(a)(5) of the Bankruptcy Code, amounts paid on account of such prepetition processing costs also are not available for distribution to unsecured creditors.

44. Also, 11 U.S.C. § 541(d) of the Bankruptcy Code excludes "property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest." It is well established under section 541(d) of the Bankruptcy Code that taxes collected on behalf of taxing authorities are not property of the estate. *See Begier v. IRS,* 496 U.S. *53, 59* (1990) (holding that taxes such as excise taxes, FICA taxes and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); *McCafferty v. McCafferty,* 96 F.3d 192, 196 (6th Cir. 1996) (citing *Begier* with approval and stating that "[s]ection *541(d)* [of the Bankruptcy Code] has often been invoked as the basis for excluding from a bankruptcy estate assets held in constructive trust by a debtor in favor of another"); *City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.),* 41 F.3d 92, 98-103 (3d Cir. 1994) (holding that funds withheld from employees' paychecks may be subject to a trust, and thus are not property of a debtor's estate, even where such funds are commingled with the debtor's other property). Accordingly, such funds are not available for general distribution to a debtor's creditors.

45. To the best of Debtor's knowledge, the amount of each Employee's prepetition claim does not exceed the priority claim amounts set forth above. Thus, the relief requested in this Motion will only change the timing, and not the amount, of the payment of such amounts.

**E.     Conclusion.**

Debtor respectfully requests this Court to enter an order (i) authorizing, but not requiring, it to pay the above described obligations, and (ii) granting such further relief as the Court deems just and equitable.

Respectfully Submitted,

/s/ Jeffrey E. Tate
J. Clay Christensen (OBA # 11789)
Jeffrey E. Tate (OBA #17150)
Jacob P. Jean (OBA #31392)
Christensen Law Group, P.L.L.C.
The Parkway Building
3401 N.W. 63rd Street, Suite 600
Oklahoma City, Oklahoma  73116
(405) 232-2020
(405) 236-1012 (facsimile)
clay@christensenlawgroup.com
jeffrey@christensenlawgroup.com
jacob@christensenlawgroup.com

PROPOSED ATTORNEYS FOR DEBTOR